The next case on the calendar for today is Behar v. U.S. Dept. of Homeland Security, docket numbers 20-3253 and 20-3256. We'll hear first from the government, Ms. Norman, whenever you're ready. Thank you. Good morning, and may it please the Court. My name is Sarah Norman. I'm an assistant U.S. attorney for the Southern District of New York. I represent the Department of Homeland Security and the Secret Service. This case presents the question whether private schedules and visitor information that are provided by a presidential candidate or President-elect in confidence to the Secret Service are nevertheless subject to compelled public disclosure under FOIA. We submit that the Court should hold that the records are protected in full by Exemption 7C. The District Court's ruling to the contrary is flawed in multiple key respects. I'm going to focus on the privacy analysis as it relates to the candidate and the President-elect because that disposes of the issue. Before you go there, can we start with Doyle, where we held, at least for the President, that these records are not agency records at all, or, you know, for purposes of constitutional avoidance, that's the way we went. Right. You didn't make that argument here, and I'm wondering why not and if you could speak to that. Yes, Your Honor. The principal reason is the analysis in Doyle and also in Judicial Watch, on which the Court relied to some degree in Doyle, was premised in part on the fact that the records were covered by the Presidential Records Act. That's not the case with regard to these records. Was it really? I mean, isn't Judicial Watch and also Doyle, aren't we saying that there's a different test for when an entity that is not subject to FOIA provides the records to another agency that is subject to FOIA, and if that entity evinces the intent to control the records and doesn't allow the FOIAble agency to dispose of them, then we say the records really belong to the non-FOIAble principal, right? Is there any reason to think that that logic wouldn't apply here? Your Honor, we absolutely agree the logic applies here. I wouldn't state the role as broadly as the Court has because I think it was limited to the context of the President's records and Presidential records. It wouldn't apply for the enforcement. But why would that be? So the Secret Service has to, you know, the President-elect is required to accept the President is, and so all of those considerations about having to provide schedules of meetings and so on to the Secret Service applies to a President-elect as well, right? We certainly agree with that point, Your Honor. And is it even clear that the executive privilege principles wouldn't apply? So President, I mean, so, you know, here we're talking about the time when President Trump became President. So President Trump on the first day issued some executive orders, right? So presumably those were drafted while he was President-elect. If somehow those executive orders, drafts of them, ended up in attachments to the Secret Service, would we say there's no issue of privilege with respect to drafts of Presidential executive orders? No, Your Honor. To the contrary, we would argue. In fact, we did reserve the ability or the right to assert, if we didn't prevail on the Exemption 6 and 7c argument, that, in fact, privilege could be asserted. And we cited a letter that was submitted to Congress by the White House Counsel's Office explaining and laying out exactly why records that are created in the course of a Presidential transition, pursuant to the Presidential Transition Act and other principles... Right, so wouldn't it be a very odd result to think that these are agency records, meaning they belong to the Secret Service up until 12 p.m. on Inauguration Day and then they're transformed into non-agency records? Why would that be? The Secret Service is still a service provider providing security to the President-elect or the President, right? Your Honor, we certainly agree with that. We agree with the logic. The difference, in our view, and the reason we didn't make the argument, is that the records aren't covered by the Presidential Records Act. That said, we certainly don't have any objection to a ruling that they're not agency records. But is there any reason why the Presidential Records Act makes a difference? So the question in Doyle was not whether it's a presidential record or not. It's whether they're agency records, right? Correct, Your Honor. But I think the fact that the records fit more into the definition of a presidential record than a definition of an agency record was part of the Court's analysis. That's the only reason that we didn't make the argument here. We certainly agree with, I think, what is at the bottom of the point. The Secret Service made the argument, right? Their letter to Behar of June 11, 2018 says, as an initial matter, responsive documents are not agency records. The schedules of candidate Trump and President-elect Trump provide a secret service by the campaign and or transition team of the property of a private entity, which is not subject to FOIA. That's right, Your Honor. That's right. We certainly agree, and I would like to emphasize that the key problem in Doyle was that the requester there, as here, was trying to get records from the Secret Service that it couldn't get from the source. And that would be true whether the records were presidential records or campaign or transition records. And that's the same here. Exactly right. It's sort of an end run to getting things that they couldn't get otherwise, which seems to subvert the notion of what's an agency record when it's being provided in connection with a service that the Secret Service provides. It does, and it also should be relevant to the analysis of the exemptions as at least one of the cases that are cited in Mr. Behar's brief identifies the property for the people case versus OMB. That very same analysis about the gatekeeper not getting records from the gatekeeper that you couldn't get from the source applies to the analysis of exemptions because it's simply hard to believe that... Precisely. Precisely, Your Honor. One of the rationales in Doyle and Judicial Watch was that Congress required security for the president and, I guess, president-elect. That does not seem to apply for presidential candidates, and I'm wondering if you could address that. I believe that's right, Your Honor. I don't know that the determination is... that that fact is crucial here as a practical matter. Society has an interest in protecting presidential candidates, certainly the major candidates who are running for president, and the fact that it's not a required protection doesn't ultimately undermine the argument much. In fact, the Secret Service provides security to visiting foreign dignitaries too, right? It would be a little odd to think that if Queen Elizabeth II came to visit America and had Secret Service protection, that all her schedules would then be subject to public disclosure. That's absolutely right, Your Honor. That would present a serious problem. You better not take Secret Service protection or tell them your schedule, otherwise we're going to release it to the public. That's right. And, of course, there are many other categories of individuals as well who receive protection. In some cases, cabinet secretaries receive protection. Can I ask you just to address one other point that the district court made, which was the district court seemed to think that the president-elect's or the candidate's interest in privacy was reduced because the person was a kind of quasi-official? But, of course, the candidate and the president-elect are not agencies, so is it appropriate to say that they don't have a privacy interest when the point of FOIA is to reveal the activities of an agency? We certainly agree with that point, and I would add that under Reporters Committee, the concept of privacy is extremely broad, as this Court has recognized many times. Privacy relates to any interest that implicates a person's control of information about himself or herself. That's been repeated many times in this Court's cases. Clearly, a personal schedule of meetings as well as visitor information implicates control over information about one's person. So there's no question that that information falls within the scope of privacy protected by FOIA and is, in fact, significant. It's a weighty and significant interest here because, as the record shows, these records were understood by the Secret Service to have been provided in confidence. They were treated as such. And, in fact, for the vast majority of records, including the most detailed schedules, which contain the names of individuals who met with the candidate and the President-elect, the staff of Mr. Trump actually, in fact, asserted control over those records. So the notion that simply because he was a candidate for office, he didn't have a privacy interest is not true. When you say, in fact, asserted control, aside from marking everything confidential and having the – you mean they marked things confidential and had that arrangement with the Secret Service, or you – Yes. That's what you're – okay. That's right, Your Honor. That's right. And on the public interest side, there is – there was also a very significant error because the district court never identified any specific Federal action or policy or conduct that would be illuminated, let alone significantly and directly illuminated, by disclosure of these records. In fact, the court found that these records would shed no light at all on how the Secret Service does its job. At most, the court identified some vague speculation that at some circumstances, meetings with specific individuals could be tied to subsequent announcements. But even after reviewing the records in camera for a substantial period of time, the court identified no such decisions or actions that the records would shed light on. The closest that the court came was to identify records that might reveal meetings about, for example, Cabinet appointments. But there, if – even if you would take – even if you accept the principle that there's some nexus between a meeting about a Cabinet appointment and the ultimate appointment, and that it sheds significant light on that, which I think is a stretch, any interest – any public interest there would be outweighed substantially by the confidentiality interest of the presidential – the President who is making the decision. Now, it's true, the Cabinet appointment might occur, or the Cabinet announcement might occur a week or a month before the actual inauguration. But as this Court recognized in Doyle, the interest there is in making sure that the individual who's making the decision, whether he's been inaugurated or not, has access to candid and unfettered advice by outside advisors or whoever he or she wants to consult. And that interest makes no – it doesn't change at all whether the meeting took place on January 19th or January 21st. And, Counsel, can I just ask, and I'll be interested to hear opposing counsel's view too, if we were to accept a district court's proposition that the public has an adequate interest, I suppose, under FOIA in accessing the identities of whom – with whom a candidate or President-elect was meeting with to shed light on, I suppose, what the President's subsequent acts would be. Would that also logically apply after a President's out of office to see – perhaps over time this interest would wane, but to see, well, who was the President meeting with shortly after they left office on the theory that, or, in fact, their closest advisors, and therefore we can also make retrospective inferences about who must have been influencing their decisions. I'm just wondering whether if one were to recognize this, and I'll be interested in hearing the other side too, do you think that it's the same interest, or it's alleged interest, that if we were to recognize one, we'd probably have to recognize the other in some respect, or do you think that they are completely distinct and there's really nothing to do one with the other? Well, I too am interested in how Mr. Behar responds to that question. I do think that there's a serious door-opening problem if you recognize an interest as sort of broad and vague and speculative as this one. And this is a good example of this. This case is a good example of that, because, of course, Mr. Trump is no longer in office, and so there will now be, presumably, if there's some disclosure here, the records will be argued to be relevant to not only whatever conduct there was in office or whatever decisions or policies that were in office, but whatever future arguments or actions by that individual may be. So I think there is very much a concern about drawing a line, and that is why I think the Supreme Court in Savish and in other cases has required that there be a nexus between the information that's withheld and some federal action or decision or policy that would be illuminated in a significant and direct way by the disclosure of the specific information. And I would note that every case that's cited in Mr. Bihar's brief on the public interest point, there was at least an arguable public interest in knowing about a specific action. So, for example, in the Electronic Frontier Foundation case, you had communications with lobbyists, between the lobbyists and the ODNI and the Department of Justice, and the names of the lobbyists, as well as the communications that they sent about a particular topic, the FISA Amendments Act, would potentially reveal information about how ODNI and DOJ considered those communications in formulating the agency's position on a particular topic. The same is true of all of the other cases they cite on this point. There is a tie to some federal action. And without that, I think you do run the risk of a very tight issue that you've identified. Your Honor, thank you. Thank you, Counselor. You've reserved three minutes for rebuttal. Mr. Bush? Good morning, and may it please the Court. After two rounds of summary judgment briefing and in-camera review by the District Court, appellant has failed to demonstrate privacy interests sufficient to outweigh the public interest in disclosure of the responsive records. This Court should decline to disturb the District Court's careful balancing of these interests and affirm the ruling below. I'd like to turn first to the public interest in disclosure of the responsive records. These records reveal who had Mr. Trump's ear as he was ascending to the nation's highest public office. During the period covered by the responsive records, Mr. Trump was assembling his cabinet, selecting senior executive branch officials, and no doubt planning the flurry of policy action that his administration would undertake in its first week. Now, does the law allow for public disclosure of those kinds of activities? Could you have submitted a FOIA request to the campaign or to the transition? No, Your Honor, we could not have. So if you can't do that, then isn't this exactly like Judicial Watch, where it's just the happenstance that a record belonging to a non-FOIA-able entity is in the possession of a FOIA-able agency? And, you know, Judge Garland says we're not going to allow you to get from the gatekeepers what you couldn't get from the people inside the gate. So why doesn't that principle apply here? Your Honor, we don't believe that it's like Judicial Watch or like Goyle. Both cases applied the canon of constitutional avoidance. Given that the current sitting executive was the keeper of the records, the courts in both cases found that... Well, it's not always that, right? So Judicial Watch relies on the Golan case, which was about when a congressional transcript was in the possession of the CIA, right? It doesn't rely on any special kind of congressional privilege. It relies on the idea that there's a non-FOIA-able entity who created the records and events that intend to control them, and it happens to be in the possession of a FOIA-able entity, and you're not going to get it through the FOIA-able entity when Congress wouldn't let you get it directly, right? So, like, they're two independent things. I understand that there also is the constitutional avoidance, but there also just is this test that the D.C. Circuit applied and that we adopted in Doyle that says when the originator of the records is non-FOIA-able, we apply this intent-to-control test, right? Certainly, Your Honor. So two points in response. So first, I think it's a crucial distinction that it's a non-FOIA-able government entity, right? So Mr. Trump, his campaign and his transition was not a governmental entity in the way that the executive is, that the CIA was, but perhaps Congress... But doesn't that make it worse? I mean, if it's a governmental entity, then there are ways to get the records, right? Like, the Presidential Records Act allows for disclosure after a certain period of time, but if it's just a private entity, it seems very odd to say you can get all of their information through FOIA. Right, but the... Just because the government offers, in the case of the campaign, and requires, in the case of the presidential elect, them to have Secret Service protection. Right, but the agency still took possession and control of the records in line with the tax analyst test, and unlike in Doyle and in Judicial Watch, where there was clear evidence that the White House was attempting to assert control over the records, you know, for instance, the Memorandum of Understanding, cited in both cases, where the White House was seeking to minimize Secret Service agency contact with the records. Here, there's no such indication. Okay, so now you're saying that we might apply that test, but that there isn't an intent to control on the part of the campaign or the president-elect. Is that your position? But we have markings on the documents that say confidential, and we have the affidavits of the Secret Service officials that say that there was an understanding that we kept in confidence. Usually, we accept those kinds of affidavits in a FOIA case like this. Certainly, Your Honor. There's an intent to control... Your Honor, I see a clear distinction here. The campaign was a private entity, and unlike the governmental entities in the judicial watch in Doyle, we apply the 7C analysis, where we weigh the privacy interest against the public interest and disclosure. I'll note also that the government, in its briefs, has not challenged the determination that these are agency records. So you're conceding that once there's an inauguration, it's not FOIA-able, right? Correct. Once the person becomes president? Correct. So isn't it odd to think that it's an agency record that's in the possession of the Secret Service up until 12 p.m. on inauguration day, and then it transforms into a non-agency record? Certainly, Your Honor. The Secret Service is providing the same services and has the same relationship as a protective service. I understand, Your Honor. Across that time, right? Yes, Your Honor. It's certainly a sharp distinction, but one that we believe is supported by the statute. I'd like to... I'm sorry. Can I ask you to address the same question that I asked the opposing counsel? And I'll have a follow-up to that. But if we were to accept your premise that there's a public interest in knowing what someone does before they take office, because presumably they're thinking and planning, and therefore we can infer from what they did before they took an office what they did and why they did what they did when they were in office, why would that inference not equally apply after they leave office? So, for example, why can't you, on the same theory, I don't know, FOIA all of the Secret Service records relating to Jimmy Carter since he left office for years and years? Because maybe historians, I think, would probably say that could very well shed light on who he's continuing to meet with and talk about what he did. Your Honor, we see a clear distinction between those two scenarios, and we don't believe that the public interest that we've asserted would extend to the post-presidency. And the reason is that courts, including this court, have been clear that the only public interest cognizable under FOIA is shedding light on government operations and activities. So, in the pre-inauguration period when Mr. Trump was selecting his cabinet and making plans to roll out policies, as he did very quickly upon assuming office, that sheds light on government activity, knowing who he was meeting with as he was doing that. The example of, for instance, ex-President Carter's records, those shed no light on government activity. Why is that, though? You're inferring that if you know who he's meeting with before he goes into office, you'll know why he acted why he did afterwards. Why would that not be an equal inference afterwards and say, again, presumably he's meeting with all the people with whom he formed close relationships of confidence during the term of office? I guess that's what I'm seeing. Since you're relying, I think, on inferential jumps, why some inferences and why not others? Certainly, Your Honor. We believe that it's not an inferential jump to say that who had Mr. Trump's ear as he was, for instance, selecting his Secretary of State or planning some of the executive orders that he rolled out in the first week of his term that his agency heads implemented sheds light on government activity. When you're talking about looking backwards to activity that has already happened and where the prospective ex-President is no longer holding power and will not hold executive power in the future, that doesn't shed light on government activity in the same way. Well, I don't think I'm going to bite on that one. But let's talk about, let's say, Hillary Clinton. Presumably, I assume, she's been living with Secret Service protection since the time that President Clinton was in the White House. Would you be similarly entitled to go back, if she were to be elected in the future, would you be entitled to go back and get all of her Secret Service records? I don't know how far back, considering she's been a candidate a number of times. Presumably, during those periods of time, she was thinking, planning, what might happen if she were to be elected. If she were to be elected in the future, yes, we would be able to get some, perhaps not all. But the public interest... Why not all? The public interest, Your Honor, is like a dial here in that it goes up as one gets closer to inauguration and as there's a closer nexus to government action. But who, I'm trying to figure out, where in FOIA is there a dial, is there something that tells us what point on the dial we're supposed to be looking at? I guess I'm not sure why that is the case and why we don't just have a line which says, look, when you're in office, we get it. And if you're not an office holder, we're not going to say, well, gosh, maybe we can draw inferences from what you did when you weren't in office about what you were going to do when you were in office. The dial comes from the word unwarranted, Your Honor, and that's the genesis of the balancing test that courts have used since Reporters Committee in 7C. So when balancing the public interest against the privacy interest, it's a highly contextual balance, and so that's where that test comes from. So you said a moment ago that the presidential candidate and the transition are not public entities, they're not government entities. But in fact, we have a presidential transition act, right? So the transition does have a kind of quasi-official status. It's eligible for public funding. And the presidential transition act requires the transition to disclose certain things to the public, like their ethics plans and sources of funding for people who work on the transition that go into the government and so on. But Congress did not make transitions subject to FOIA or otherwise require disclosure of this kind of information. So why isn't this... So even if you had a distinction with respect to the campaign, why isn't that just like a case like the president where Congress provided you couldn't get these records directly from the transition, and therefore you can't use FOIA to get it in directly? Your Honor, we believe that... And I see my time is up. We can just answer that. Yeah. We believe that the sharp distinction is in whether the officeholder held executive power. And that's the root of the constitutional avoidance question that came up in Doyle and in Judicial Watch. And there's no constitutional problem to avoid here. We're operating within the bounds of the statute. These are agency records. And the court should, as Judge Kaplan did, apply the 7C balancing test to order their release. Mr. Bush, can I ask you one more question? Yes. About the privacy interest here. Certainly. The judicial candidates, let's take that. The period of judicial candidacy... I'm sorry, judicial. Presidential candidacy is a period when nobody knows who's going to be elected. Yeah. You have multiple candidates, at least two getting Secret Service protection during that period. Presumably, during that period, those candidates would have certain privacy interests, you would agree, right? Yes, Your Honor. Are you suggesting that, retrospectively, the candidate who is elected somehow has a diminished or reduced privacy interest during that period? That the privacy interest, in other words, for a certain amount of time, can go up or down, depending on what later happens in the world? Not exactly, Your Honor. So, when evaluating the privacy interests, we take Justice Scalia's invitation to weigh what the documents reveal. And here, the documents reveal little more than that Mr. Trump met with particular individuals at particular times. And so, we're not saying that his privacy interest is eliminated by the fact of his election, but we are saying that the type of information that the document reveals, excuse me, that the documents reveal, implicates minimal privacy interests relative to the public interest in disclosure. And I think it's instructive to weigh this case in comparison to some of the precedent-worst citing, where the documents at issue were FBI rap sheets, photos of someone's body, and documents of abuse at Guantanamo Bay. So, just to be clear, are you saying that the privacy interest remains static, but the public interest increases? Yes. If the person is elected, but you would be at least suggesting on the privacy side, the privacy interest remains static. That's your position? Yes, Your Honor. Your position also leads to the result that if an incumbent president is running against a non-incumbent president, and they both have Secret Service protection, the same records related to the incumbent president are not agency records, but the equivalent records for the challenger would be agency records subject to FOIA. Yes. Right? Yes, Your Honor. That is our position, and while we agree with the Secret Service that that's certainly a discrepancy, again, that's the product of the sitting executive's particular prerogatives, and our request is within the bounds of the statute. Okay. Thank you, counsel. Thank you. Ms. Norman, you have three minutes for a vote. Your Honor, I'll try to be brief. Thank you. I think the discussion has emphasized, and Mr. Behar's counsel agrees, that there are a number of really conflicting problems and anomalies with a result that schedules and visitor information of a president-elect or a presidential candidate are subject to compelled disclosure under FOIA, whereas the moment that he or she is inaugurated as president, the records are no longer available. That is the problem that's at the heart of this case and the reason that the government urges the court to reverse the district court's decision. Just looking at the question that was asked about the intent-to-control test in Doyle, I just want to add that Doyle did involve White House WAVES, what are called WAVES records, but it also involved presidential schedules that are quite similar to the ones here. Secondly, I would add that we certainly agree with my colleague's statement that the focus should be on what the information reveals, and the specific information here reveals who met with the candidate and the president-elect at particular times, but generally speaking, it doesn't reveal much more than that, and that goes very strongly to the public interest side of the FOIA balance, the Exemption 7 balance. You really have to speculate about the import of specific meetings and their nexus, if any, to subsequent federal decisions or policies, and to the extent a nexus can be drawn, that brings you into a different balance where the interest in ensuring that the president can deliberate with confidence and receive confidential advice from outside advisors, that interest goes way up, and that's an interest that's both on the privacy side and the confidentiality that a president-elect could expect and intends, as well as the public interest side. There's a public interest in ensuring that the president or president-elect can make those decisions and receive candid and unfettered advice. And I do want to just add, there's also another important public interest here to consider, which is the informed judgment of the deputy director at the time of the Secret Service that if these kinds of records are subject to compelled disclosure, it will, in fact, jeopardize the free flow of information to the Secret Service and make it harder for that agency to do its job. That is a completely logical and plausible prediction because it's very easy to understand that if providing a detailed schedule of who an individual is going to meet with on a day-to-day basis... So in addition to that, the district court also seemed to require the Secret Service to identify all the privacy interests of the campaign or the candidates, as if, like, to identify what are the sensitive meetings and what are the not-sensitive meetings and so on. I mean, is the Secret Service equipped to do that? What does the Secret Service know about the meetings of the campaign or the transition? And that's another reason why the district court's ruling really does not make sense. The Supreme Court and Reporters Committee, particularly in the 7C context, said that these rules have to be workable rules. And in this context, when you're talking about the Secret Service evaluating the privacy and public interest of specific records reflecting specific meetings of the protété, in which the Secret Service had no involvement and in many cases wouldn't even... it wouldn't even be apparent from the face of the record who the visitors were. They might have to look it up and then try to do some kind of speculative analysis and apply broad assumptions as to what might have been the potential impact of this meeting on some unspecified federal action after the president was inaugurated. That's just not a workable rule. Can I ask a follow-up question on something that Judge Monashie asked earlier, which is, I know the Secret Service sometimes undertakes to provide security for foreign dignitaries, including those who may be visiting the White House or wherever. I know it could be other agencies like Diplomatic Security Service, but then presumably the same issue would arise with that agency. Is there a separate FOIA exemption for foreign affairs or national security that would potentially apply, or would this be the one that... the only one that would be in play? And I understand if this is going too far afield. I'm just curious. It doesn't, Your Honor, and I haven't really thought through that completely. There's certainly a separate exemption under Exemption 1 for classified information that relates to national security. Assuming that's not been classified. It's unlikely that that would be in play. The next question I would ask is whether there's a statute that applies to specific... specifically to information conveyed by dignitaries in that context. I confess that I don't know the answer to that question. If there were a statute, that would be applicable, and I'm happy to follow up with a letter to identify whether or not there is any such statute. You know, if that wouldn't be too much trouble, maybe a page from each of you within... I don't know what you're saying. Sorry. A week. A week. A week from today. That's fine, Your Honor. I'm sure my client will be able to answer the question readily, but I think the broader point is we would very likely be making this very same argument, and obviously the broad approach taken by the district court here, if applied in other cases, could raise serious problems. Thank you. Thank you both. We'll take the case under advisement. Thank you.